Thomas P. HORRIGAN and Gabe Horrigan, his wife, Plaintiffs-Appellants-Petitioners,

v.

STATE FARM INSURANCE COMPANY, Defendant-Respondent,

Joseph H. THEIN, Defendant.

Supreme Court

*No. 80–1502. Argued February 2, 1982.—Decided March 30, 1982.*

(Also reported in 317 N.W.2d 474.)

For the plaintiffs-petitioners there were briefs by *Frank R. Terschan, Dennis M. Grzezinski, Michael J. Lund* and *Frisch, Dudek & Slattery, Ltd.,* of Milwaukee, and oral argument by *Mr. Terschan.*

For the defendant-respondent there was a brief by *Michael A. Mesirow* and *Kasdorf, Dall, Lewis & Swietlik, S.C.,* of Milwaukee, and oral argument by *Mr. Mesirow.*

DAY, J. This is a review of a decision of the court of appeals which affirmed a judgment of the circuit court for Milwaukee county, Hon. Leander J. Foley, Jr., Judge, dismissing the complaint of Thomas P. Horrigan and

Gabe Horrigan, his wife, plaintiffs-appellants-petitioners, against State Farm Insurance Company (hereinafter State Farm), defendant-respondent. The trial court held it lacked jurisdiction because there was no proper service of process on State Farm.

The issue on review is: Was plaintiffs' service of process made upon someone "apparently in charge of" the State Farm office, in accordance with sec 801.11 (5) (a), Stats. 1979–80.[1]

We hold that the statute requires that the facts and circumstances surrounding the service must be such that a reasonable process server would conclude that he has served the person apparently in charge of the office of an officer, director or managing agent of the corporation to be served.

We conclude that proper service was made in this case and thus jurisdiction was obtained over State Farm. We remand the matter to the trial court for further proceedings.

This action arose out of an automobile accident in which a car driven by Joseph Thein, who was insured by State Farm, struck a motorcycle driven by Thomas Horrigan. Mr. Horrigan and his wife commenced an action for damages against State Farm and Mr. Thein.

---

[1] "801.11 **Personal jurisdiction, manner of serving summons for.** A court of this state having jurisdiction of the subject matter and grounds for personal jurisdiction as provided in s. 801.05 may exercise personal jurisdiction over a defendant by services of a summons as follows: . . .

"(5) DOMESTIC OR FOREIGN CORPORATIONS, GENERALLY. Upon a domestic or foreign corporation:

"(a) By personally serving the summons upon an officer, director or managing agent of the corporation either within or without this state. In lieu of delivering the copy of the summons to the officer specified, the copy may be left in the office of such officer, director or managing agent with the person who is apparently in charge of the office."

The complaint against Mr. Thein was dismissed by the trial court for lack of proper service upon him. Plaintiffs did not appeal that dismissal.

On May 11, 1979, Mr. James Hartmann, a process server employed by plaintiffs' counsel, delivered a summons and complaint to the offices of the State Farm managing agent at 2747 North Mayfair Road, Milwaukee, Wisconsin. State Farm admits actual receipt of the summons and complaint. On January 17, 1980, State Farm filed a motion pursuant to sec. 801.08, Stats. 1979–80,[2] contesting the trial court's jurisdiction for lack of proper service on State Farm.

The hearing on State Farm's motion established the following facts. Mr. Hartmann went to the State Farm office on May 11, 1979. The reception area was separated from the interior office which housed the claims supervisor. According to State Farm, the receptionist at the office was instructed that if someone came to the office to serve legal process, she was to summon one of the claims' superintendents to the reception area to accept service.

Although Mr. Hartmann stated that he did not know exactly what he said to the receptionist, he testified that he "walked in the door and told the receptionist that [he] had a summons and complaint to serve upon the corporation and [he] would need an officer or agent of the corporation to serve it upon." Mr. Hartmann tes-

[2] "801.08 **Objection to personal jurisdiction.** (1) All issues of fact and law raised by an objection to the court's jurisdiction over the person or property as provided by s. 802.06(2) shall be heard by the court without a jury in advance of any issue going to the merits of the case. If after such a hearing on the objection, the court decides that it has jurisdiction, the case may proceed on the merits; if the court decides that it lacks jurisdiction, the defendant shall be given the relief required by such decision. Such decision upon a question of jurisdiction shall be by order which is appealable."

tified he was then told by the receptionist to "take a seat" and that she would get someone to receive the papers. Soon after he sat down, a man came out from the interior offices into the reception area. Mr. Hartmann handed the summons and complaint to that person who did not question the service or deny that he was the appropriate person to receive it. Mr. Hartmann did not ask this person whether he was there to accept service, whether he was the person summoned by the receptionist, or whether he was in fact authorized to accept service. The process server assumed that the person was there to receive the summons and complaint because of the manner in which he was approached by the recipient.[3]

The affidavit of service does not recite, nor did the process server know the identity of the person whom he

[3] Mr. Hartmann testified in part as follows:

"I . . . walked in the door and told the receptionist that I had a Summons and Complaint to serve upon the corporation and I would need an officer or agent of the corporation to serve it upon. . . . She [receptionist] told me, 'take a seat' and she said she would get someone to receive those papers. . . . The gentleman came out and I served him and then I left. . . . Well he came up to me and in a manner which I assumed he was there to get those papers."

Hartmann did not know the identity of the man that responded to the receptionist's call or what position that person held at State Farm.

Mr. Hartmann was asked the following questions and replied as follows:

"*Q.* . . . You testified . . . that you assumed that the person who you served these papers on at State Farm was an officer, director or managing agent? *A.* Well I made that assumption based upon when I went to the receptionist, I asked her that I needed to see either an officer or agent of the corporation in order to serve the Summons and Complaint. I had no reason really to believe that he wasn't."

"*Q.* All right, and when this person came out, did it appear to you that this person was in charge of that? *A.* Yes."

had served. Employees of State Farm admitted they accept service there but claimed they could not determine who was served by Hartmann. One of their employees testified that the summons and complaint came into his hands on May 25, 1979.[4] The State Farm receptionist was not called as a witness at the hearing.

The trial court found that petitioner's process server had not served the summons and complaint on a person "apparently in charge of the office," and therefore proper service had not been had pursuant to sec. 801.11(5) (a), Stats. Accordingly, the trial court ruled that it had no personal jurisdiction over State Farm. The court of appeals affirmed the trial court's dismissal of the ac-

---

[4] Mr. Harold E. Nixon, Divisional Claims Superintendent of State Farm had his offices at 2747 North Mayfair Road in Wauwatosa on May 11, 1974. He was called adversely by the plaintiff and testified there were no officers or directors of State Farm in the State of Wisconsin. Don Kost was the highest ranking employee of the company in Wisconsin and was located at the Mayfair address and is the agency director. Mr. Nixon is second highest ranking employee of State Farm and supervised all claim activities in Wisconsin. He testified, "it is not unusual" for a Summons and Complaint to be served on the company at the Mayfair office and "that we customarily receive Complaint and Summons there," and testified they have people there who have been "designated" to accept service of Summonses and Complaints.

Mr. Nicholas Joseph Bur, an employee of State Farm testified that he is the bodily injury claims superintendent with offices at the Mayfair address. He supervises claims adjusters. He testified that another employee, Bud Frisque, came to him on May 25, 1979 and said he found the *Horrigan* Summons and Complaint on his (Frisque's) desk.

He further testified that the receptionist is instructed "to notify a supervisory person when someone appears with a Summons and Complaint or a subpoena."

The supervisory person who accepts the Summons and Complaint is supposed to put his name or initials and the date in the upper right, or center of the top sheet. No such notation was made on the *Horrigan* papers.

tion. The plaintiffs sought and were granted review by this court.

Both parties agree that sec. 801.11(5)(a), Stats., is the applicable statute governing the service of process. Although State Farm acknowledges actual receipt of the papers and had actual notice of plaintiffs' action, it correctly argues that actual notice alone does not settle the question. This court has held that when a statute prescribes how service is to be made, compliance with the statute is required for personal jurisdiction even where the defendant has actual notice of the summons and complaint. *519 Corp. v. Department of Transportation*, 92 Wis. 2d 276, 287, 284 N.W.2d 643 (1979); *Danielson v. Brody Seating Co.*, 71 Wis. 2d 424, 429, 238 N.W.2d 531 (1976). The question is, were the provisions of sec. 801.11(5)(a) complied with.

Sec. 801.11(5)(a), Stats., states that service of process may be obtained upon a corporation doing business in Wisconsin, such as State Farm:

"By personally serving the summons upon an officer, director or managing agent of the corporation either within or without this state. *In lieu of delivering the copy of the summons to the officer specified, the copy may be left in the office of such officer, director or managing agent with the person who is apparently in charge of the office.*" (Emphasis added.)

Both parties agree that the service was not made on an officer, director or managing agent of the corporation. However, it is also undisputed that the process server delivered the summons to the office of a "managing agent." The issue then is whether the plaintiff's process server left the summons "with the person apparently in charge of the office."

In *Keske v. Square D Co.*, 58 Wis. 2d 307, 313, 206 N.W.2d 189 (1973), this court construed the "appar-

ently in charge" language of the predecessor of sec. 801.-11(5) (a), Stats., as follows:[5]

"Sub. (5) (a), however, is framed in the alternative. If an 'officer, director or managing agent of the corporation' cannot be personally served, then the summons can be left 'with the person who is apparently in charge of the office.' *The use of the word 'apparently' can only refer to what is apparent to the person actually serving the summons."* (Emphasis added.)

Plaintiffs argue that once the process server states that he assumed the individual whom he served was "apparently in charge of the office," that statement forecloses the matter and that further inquiry into the circumstances surrounding the service is unnecessary. However, as State Farm correctly argues, that is not the law in Wisconsin.

In *Keske,* this court approved the following statement of the trial court:

"[I]t may well be that in some instances it would be unreasonable for a process server to conclude that someone outside of the immediate geographical office of the officer, director or managing agent was apparently in charge of the 'office,' but I don't think that this is true in the instant case." 58 Wis. 2d 314.

This court stated:

"We concluded that the process server's conclusion that Mr. Vetta was 'apparently in charge of the office' was reasonable under the facts, and that the fundamentals of process, to wit: notice and knowledge, had been accomplished. We further conclude that sec. 262.06(5) (a), Stats., was complied with."

Clearly the circumstances surrounding the service of process, as they appeared to the process server, are relevant. As both the trial court and the court of appeals

[5] Sec. 262.06(5) (a), Stats. 1969.

held in the instant case, there must be more than the unsupported assumption of the process server. Specifically, the process server's conclusion must be one that was reasonable under the circumstances.

We conclude that the perception of the process server that he had served the person "apparently in charge of the office" was reasonable. State Farm's receptionist told the process server she would get someone to receive the papers. The process server was given no reason to believe that the person apparently responding to the receptionist's call was not a person upon whom service could be made. That person raised no objection or question about receiving the summons and complaint that was handed to him.

The trial court and the court of appeals held that the process server's conclusions were unreasonable because of his failure to inquire as to the position, responsibility, authority or name of the individual summoned to the reception area by State Farm's receptionist. We disagree. The rulings of the trial and appellate courts would in effect require the process server to inquire and determine the actual authority of the individual summoned to receive service. The exact identity and job title of the person upon whom service was made is not critical to the issue of whether that person was apparently in charge.

By asserting that the process server acted unreasonably, State Farm is in effect claiming that the process server's mistake was in assuming that its receptionist or the person accepting service would not mislead him. A process server has a right to expect that when he asks for a person to accept service, and, apparently in response to that request, a person comes out and accepts the papers, proper service has been obtained.

Both parties cite *Keske*, 58 Wis. 2d 307, 206 N.W.2d 189 (1973), in support of their position. In *Keske*,

as in the case at bar, a process server went to the reception area of the defendant corporation. Each asked the receptionist for an officer or agent of the corporation upon whom he could serve a summons and complaint. The receptionist then contacted someone who emerged from the inner office to accept it. In the *Keske* case, however, the person who accepted service at first stated to the process server that he was not sure whether he should be served or not. He said that whether he was in charge of the office or not "depends on what the situation is." The process server in *Keske* questioned the man and ascertained that he had previously accepted service and that no one in the corporate chain of command higher than the man present was available. On those facts, this court affirmed the trial court decision that the process server had reasonably concluded that the man was apparently in charge of the office and that proper service had been obtained.

The defendant contends that *Keske* demonstrates that Mr. Hartmann should have made inquiries of the recipient of the papers, in order to determine whether the individual was apparently in charge. As noted, Mr. Hartmann merely assumed that the man could receive process. He made no inquiries. However, unlike the situation in *Keske,* he was not given any reason to doubt that the man could receive process.

When a person appears in response to a request for someone who may be served with legal process, it will normally be reasonable for the process server to serve that person. To hold otherwise "would produce a situation whereby a process server becomes a participant in a game of 'hide-and-seek' at the mercy of secretaries or anyone else who chooses to prevent him from accomplishing his task." *Keske,* 58 Wis. 2d at 315. Once that person objects, or raises doubt over his authority to receive process, it may become incumbent upon the proc-

ess server to make further inquiries, as in *Keske*. In the instant case, the individual served did nothing to change the process server's reasonable belief that the person who appeared was authorized to accept service of process. At that point his decision to serve the summons and complaint was reasonable and proper service was had. We therefore reverse the decision of the court of appeals and remand the case to the trial court for further proceedings.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded to the trial court for further proceedings.