IN the INTEREST OF JERMAINE T. J., A Person Under the Age of 18:

STATE of Wisconsin, Petitioner-Respondent,

v.

JERMAINE T. J., Respondent-Appellant.†

Court of Appeals

*No. 93–1832. Submitted on briefs November 11, 1993.—Decided December 8, 1993.*

(Also reported in 510 N.W.2d 735.)

†Petition to review denied.

On behalf of respondent-appellant, the cause was submitted on the briefs of *Gerard F. Kuchler* of *Law Office of Gerard F. Kuchler* of Waukesha.

On behalf of petitioner-respondent, the cause was submitted on the brief of *Ted S. Szczupakiewicz*, assistant district attorney.

Before Anderson, P.J., Brown and Nettesheim, JJ.

ANDERSON, P.J. Jermaine T. J. appeals from an order of the juvenile court waiving jurisdiction and referring him to the district attorney for appropriate criminal proceedings in circuit court. On appeal, Jermaine asserts that the juvenile court lacked competence to adjudicate his specific case because of the court's failure to follow the mandated statutory procedure for service of the summons and petition and issuance of a capias. We agree with Jermaine that personal service must be attempted before a capias may be issued due to a juvenile's failure to appear in answer to a mailed summons. However, we affirm because we conclude that the error in securing Jermaine's physical presence is not a personal jurisdiction defect that deprives the court of competence to proceed.

Jermaine was taken into custody on September 5, 1992 and placed in Waukesha county's secure juvenile detention facility. Delinquency and waiver petitions were prepared the same day and filed on September 8. The secure detention hearing was conducted on September 8 and the court commissioner permitted Jermaine's release to a parent when available. A summons and copies of the petitions were sent by regular mail to Jermaine and his parents on September 15 notifying them of a hearing scheduled for October 6, 1992. Jermaine failed to appear at the October 6 hearing. The juvenile court then tolled the applicable time and issued a capias to take Jermaine into custody. Jermaine was ultimately taken into custody in Milwaukee county on March 2, 1993 on an unrelated charge and transferred to the Waukesha county secure juvenile detention facility.

An initial appearance on the waiver and delinquency petitions was held on March 4. Jermaine entered denials to the petitions and reserved all of his

rights. The court commissioner orally informed Jermaine that the waiver hearing would be conducted on April 9. On March 11, 1993, a letter was mailed to Jermaine advising him that the waiver hearing had been rescheduled to March 25 and that he was required to be present at the hearing. Again, Jermaine failed to appear and a second capias was issued. Jermaine was arrested on June 8, 1993 and ordered held in the county jail in lieu of a cash bond or a personal recognizance bond.

The waiver hearing was finally held on June 17, 1993 and the juvenile court scheduled another proceeding to announce its decision on the petition to waive jurisdiction. At a hearing on June 23, the court explained its reasons for waiving Jermaine into adult court. At the conclusion of the hearing, Jermaine's counsel objected to the personal jurisdiction of the juvenile court on the grounds that the service of the summons and petitions and issuance of the capias did not comply with the requirements of secs. 48.273(1) and 48.28, Stats. The motion was denied and Jermaine appeals from the juvenile court's denial of his motion.

█

The sole issue on appeal is Jermaine's contention that the provisions of secs. 48.273(1) and 48.28, Stats., are mandatory and the issuance of a capias before properly serving the summons and petition on Jermaine deprived the juvenile court of its competency to proceed. This issue requires us to interpret the applicable statutes which we do without deference to the juvenile court. *See In re L.M.C.*, 146 Wis. 2d 377, 389, 432 N.W.2d 588, 593 (Ct. App. 1988).

Section 48.273(1), Stats., permits service of the summons and petitions upon the juvenile and other

interested parties by regular mail and provides, in part:

> If the persons fail to appear at the hearing or otherwise to acknowledge service, *a continuance shall be granted,* except where the court determines otherwise because the child is in secure custody, and service shall be made personally by delivering to the persons a copy of the summons . . . except that if the court is satisfied that it is impracticable to serve the summons . . . personally, it may make an order providing for the service of the summons . . . by certified mail. . . . [Emphasis added.]

This provision is clear; if the juvenile and other interested parties are served with the summons by regular mail and fail to appear at the scheduled hearing, the juvenile court must grant a continuance and attempt either personal service or service by certified mail. The only exception to the automatic continuance is when the juvenile is in secure custody. Under such circumstances, the juvenile court may proceed with the scheduled hearing.

██ Jermaine argues that under this statute the juvenile court was required to continue the scheduled appearance so that he could be personally served. The juvenile court did continue the hearing. However, the juvenile court did not order that Jermaine be personally served; nor did it find that personal service would be ineffectual and order service by certified mail. Under the unambiguous terms of the statute, we conclude that this was error.

Jermaine builds on his argument by contending that the juvenile court could not issue a capias until an attempt at personal service or service by certified mail

had been made. Section 48.28, Stats., fixes the procedure for the issuance of a capias and provides in pertinent part:

> In case the summons cannot be served or the parties served fail to obey the same, or in any case when it appears to the court that service will be ineffectual a capias may be issued for the parent . . . or for the child.

We agree with Jermaine. Section 48.28, Stats., with one exception, limits the issuance of a capias to two situations: where the summons cannot be served and where the summons is served and the parties fail to appear.[1] Section 48.28 must be read in conjunction with sec. 48.273(1), Stats. The juvenile court erred when it issued a capias without first ordering either personal service or service by certified mail. The juvenile court could have avoided this error if it had found that additional attempts at service of the summons would have been ineffectual.

Jermaine urges us to hold that the requirements of secs. 48.273(1) and 48.28, Stats., are mandatory procedural requirements and any violation of these statutes, like the violation of the mandatory time limits, deprives the court of its competency to proceed. We do not agree that the error of the juvenile court mandates that this case be dismissed.

It is axiomatic that as a court, the juvenile court's plenary subject matter jurisdiction is conferred by the constitution. *See L.M.C.*, 146 Wis. 2d at 390, 432 N.W.2d at 594. The "exclusive jurisdiction" over chil-

---

[1] The one exception is a catch-all provision that permits issuance of a capias upon a specific finding, on the record, by the court that service of the summons would be ineffective.

dren conferred on the juvenile court is among the lesser powers of the court and is referred to as the competency of the court to adjudicate a specific case. *See In re Michael J.L.*, 174 Wis. 2d 131, 137, 496 N.W.2d 758, 760 (Ct. App. 1993). "Because a state acts through both its constitution and statutes, competence . . . would include both personal and subject matter jurisdiction." *In re B.J.N.*, 162 Wis. 2d 635, 656 n.17, 469 N.W.2d 845, 853 (1991).

Sections 48.273(1) and 48.28, Stats., deal directly with securing the physical presence of the juvenile before the court. "This physical presence gives the juvenile court jurisdiction over the custody of the child." *State ex rel. La Follette v. Circuit Ct.*, 37 Wis. 2d 329, 343, 155 N.W.2d 141, 148 (1967). Therefore, before the court can waive its exclusive jurisdiction over the custody of the juvenile, it must have personal jurisdiction.

We conclude that the statutes specifying how the juvenile court obtains personal jurisdiction are not in the same category as statutes that impose mandatory time limits on juvenile proceedings. There are two reasons why we reach this conclusion. First, the mandatory time limits between critical stages in the juvenile adjudication process are necessary to protect the due process rights of juveniles. *See In re R.H.* 147 Wis. 2d 22, 33, 433 N.W.2d 16, 21 (Ct. App. 1988), *aff'd*, 150 Wis. 2d 432, 441 N.W.2d 233 (1989). Second, it is the clear legislative intent that failure to comply with the mandatory time limits will result in a dismissal with prejudice. *See* sec. 48.25(2)(a), Stats. There is no equivalent statute dealing with service of a summons or issuance of a capias.

The juvenile court's error in improperly issuing the capias resulted in Jermaine being illegally taken into

secure juvenile custody. We have already concluded that it would be inappropriate to engraft the remedy—dismissal with prejudice—for failure to comply with mandatory time limits to this situation. We can resolve the question of what is the appropriate remedy by looking to the remedy available to a criminal defendant who is illegally arrested. *See State v. Woods,* 117 Wis. 2d 701, 710, 345 N.W.2d 457, 462 (1984) ("Because Woods challenges the lawfulness of the officers' action in taking him into [juvenile] custody, the standards governing probable cause to arrest an adult are applicable to a determination whether the taking of Woods into [juvenile] custody was lawful."); *In re L.A.T.,* 167 Wis. 2d 276, 283, 481 N.W.2d 493, 496 (Ct. App. 1992) (The same principles which govern the sufficiency of criminal complaints govern the sufficiency of a petition in a juvenile court proceeding.).

In Wisconsin, an illegal arrest is not a jurisdictional defect. *State v. Smith,* 131 Wis. 2d 220, 240, 388 N.W.2d 601, 610 (1986). The Wisconsin Supreme Court has held that "a defendant appearing before a trial court pursuant to an unlawful arrest presents no barrier to that court's obtaining jurisdiction over the defendant." *Id.* at 236, 388 N.W.2d at 608. The reasons the supreme court gave for adopting this generally accepted rule are equally applicable to juvenile proceedings.

Just as the criminal code's scheme emphasizes the importance of the criminal complaint in obtaining personal jurisdiction, *id.* at 238, 388 N.W.2d at 609, the juvenile code's scheme emphasizes the importance of the petition in obtaining personal jurisdiction. The petition is the document which initiates juvenile pro-

ceedings. *See* sec. 48.25(1), Stats. The delinquency petition must contain facts that establish probable cause. *See* sec. 48.255(1)(d), Stats. A summons cannot be issued unless a delinquency petition has been filed. *See* sec. 48.27(1), Stats. The juvenile can file motions challenging the sufficiency of the probable cause. *See* sec. 48.297(2), Stats. At a plea hearing, the juvenile must be advised of the allegations in the petition and the nature and possible consequences of the delinquency proceedings. *See* secs. 48.30(2) and 48.243(1), Stats. The juvenile enters a plea to the allegations of the petition. *See* sec. 48.30(4). As the supreme court concluded in *Smith*, we conclude that it is the delinquency petition that is the critical procedure for acquiring personal jurisdiction over the juvenile. *See Smith*, 131 Wis. 2d at 238-40, 388 N.W.2d at 609-10.

This scheme also serves to protect the juvenile's due process rights. The juvenile's due process rights of notice of the nature of the charges and a trial conforming to constitutional procedural safeguards are not put in jeopardy if the juvenile is illegally taken into custody. *See id.* at 236, 388 N.W.2d at 608.

A juvenile illegally or improperly taken into custody is not left without any redress. As in *Smith*, the exclusionary rule is available to close the door to the courtroom to evidence procured by official unlawfulness. *Id.* at 240, 388 N.W.2d at 610.

■

We conclude that the error in issuing a capias for Jermaine did not deprive the court of its competence to adjudicate the merits of the waiver petition. The improper issuance of a capias to secure Jermaine's physical presence did not impinge upon any of his due process rights or violate the mandatory time limits designed to protect those rights.

*By the Court.*—Order affirmed.