STATE of Wisconsin,
Plaintiff-Respondent,

v.

Henry W. AUFDERHAAR,
Defendant-Appellant-Petitioner.

Supreme Court

*No. 2003AP2820–CR. Oral argument April 27, 2005.
—Decided July 7, 2005.*

2005 WI 108

(Also reported in 700 N.W.2d 4.)

For the defendant-appellant-petitioner there were briefs by *J. Paul Neumeier, Jr., Raymond E. Krek* and *Krek & Brantmeier, S.C.,* Jefferson, and oral argument by *Raymond E. Krek.*

For the plaintiff-respondent the cause was argued by *Christopher G. Wren,* assistant attorney general, with whom on the brief was *Peggy A. Lautenschlager,* attorney general.

¶ 1. PATIENCE DRAKE ROGGENSACK, J. Henry W. Aufderhaar seeks review of a court of appeals decision affirming a circuit court order denying Aufderhaar's motion to dismiss the criminal proceedings against him or transfer jurisdiction to the juvenile court. Aufderhaar argues that neither the circuit court exercising juvenile court jurisdiction[1] nor the circuit court to which waiver was ordered[2] had personal jurisdiction over him because the juvenile court, which held a waiver hearing and waived him into adult court, failed

---

[1] In order to distinguish the types of actions in the circuit court, we refer to this court as the "juvenile court."

[2] We refer to the circuit court to which waiver was ordered as the "adult court" or the circuit court.

to follow the statutory requirements for service of process in juvenile cases. We conclude that the failure to follow the statutory requirements for service defeats the State's assertion of personal jurisdiction and requires the circuit court to dismiss the criminal charges without prejudice and the juvenile court to vacate the waiver order. We therefore reverse and remand.

## I. BACKGROUND

¶ 2. Aufderhaar was fifteen years old and living with his parents in Whitewater, Wisconsin on June 4, 2001, when he was interviewed by a police officer about five allegations of second-degree sexual assault of a child and two allegations of fourth-degree sexual assault of a child. Later that month, on June 29, he moved with his parents. The family lived with Aufderhaar's grandfather for approximately two weeks and then moved to Montana. On August 21, the Jefferson County District Attorney filed a delinquency petition against Aufderhaar, but when authorities learned that Aufderhaar had moved with his family to Montana, the file was transferred to Walworth County, where the incidents were alleged to have occurred.

¶ 3. On October 9, 2001, Walworth County attempted to mail documents containing the pending charges to Aufderhaar and his parents in Montana, but the mail was returned as "Attempted-Not Known." On October 26, a delinquency petition was filed in Walworth County with a return date of November 8. On October 31, a juvenile court clerk mailed the summons and delinquency petition to the Aufderhaars' former address in Whitewater. Aufderhaar did not appear for the initial plea hearing on November 8 and a capias was ordered. The court did not grant a continuance, nor was

341

service made personally or by certified mail. The case then sat dormant for about a year and a half.

¶ 4. On March 6, 2003, the juvenile court clerk received a telephone call from Montana authorities that Aufderhaar was involved in a juvenile matter in that state relating to sexual behavior. The clerk forwarded this information to the district attorney's office and on March 12, the district attorney filed a petition for waiver into adult court in the still-pending delinquency petition. By this time, Aufderhaar was more than seventeen years old. The Montana authorities had given the Walworth County clerk a new address for Aufderhaar, so she sent the waiver petition to that new address. The waiver petition was not returned.

¶ 5. On April 23, the juvenile court waived Aufderhaar in absentia into adult court. It subsequently issued an order to that effect. A criminal complaint was filed, and a warrant was issued.

¶ 6. On October 2, 2003, Aufderhaar appeared in Walworth County and challenged the adult court's personal jurisdiction over him. He asserted that Wis. Stat. § 938.27(3)(a)1 (2001–02)[3] mandates the juvenile court to notify the child and parents of all hearings, that Wis. Stat. § 938.273(1) requires a continuance and personal service if there is no appearance at the initial proceeding and that the same statute allows for service by certified mail in the event personal service is deemed to be impracticable. Aufderhaar alleged that because the statute was not followed, the juvenile court lacked personal jurisdiction over him and it had no authority to waive him into adult court. In the alternative, Aufderhaar argued that the waiver in absentia violated

---

[3] All subsequent references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

due process. Aufderhaar also argued that the 502–day delay in filing the juvenile waiver petition was unreasonable and prejudiced him.

¶ 7. The circuit court rejected these arguments. It concluded that Aufderhaar had absconded with his family in order to avoid prosecution. The circuit court stated that although the juvenile court did not expressly say at the waiver hearing that any attempt at service would have been ineffectual because the Aufderhaars were intent on avoiding service, such an assumption was implicit in its mention that there was a warrant out for Aufderhaar's father, who was "on the run." The circuit court concluded that it was correct to assume service would have been ineffectual. The circuit court ruled, in the alternative, that Aufderhaar had notice of the waiver hearing because the waiver petition mailed to him was presumed to have reached him since it was not returned as undeliverable. In the circuit court's view, this notice was sufficient to defeat the claim of lack of personal jurisdiction. Regarding the delay, the circuit court held that while the State may have been negligent in not acting in a timely manner, it did not do so with the intent to manipulate the system so as to be able to try Aufderhaar as an adult. Therefore, there was no violation of his due process rights.

¶ 8. Aufderhaar then filed a petition for leave to appeal a nonfinal order. He raised three arguments: (1) that there was an unreasonable delay in the filing of the waiver petition (502 days); (2) that he was not given proper notice of the waiver hearing; and (3) that the waiver granted in absentia denied him due process.[4] The court of appeals granted the petition. On

---

[4] Aufderhaar raised two other issues in his brief that were not raised in the petition. Aufderhaar alleged that the waiver

appeal, the court affirmed the circuit court's denial of Aufderhaar's motion, but on different grounds. The court of appeals rejected the circuit court's conclusion that service would have been ineffectual because Aufderhaar's father was "on the run," stating:

> First, the record shows no factual basis for finding that the father had moved to avoid the law other than that he had two pending misdemeanors. Second, even had the father moved to avoid the law and would work to avoid personal service, we fail to see how sending certified mail to the correct mailing address in Montana would somehow have been a useless exercise. And third, we do not understand how a juvenile can be held to be vicariously liable for the actions of a parent in moving out of state such that the State is relieved from even trying to get the correct address and mailing a document to that address by certified mail.

The court of appeals further stated:

> It is undisputed that the juvenile court erred when, following Aufderhaar's nonappearance at his initial hearing to respond to the delinquency petition, it failed to comply with Wis. Stat. § 938.273, which requires the court to continue the matter and to order either personal service or service by certified mail unless it finds that such service would be ineffectual. The question to be decided is the legal ramifications of such a failure.

---

petition was insufficient as a matter of law and that the delinquency petition should have been dismissed because it was not timely filed. The court of appeals declined to address these issues, stating, "The major holding here is that when this court accepts an interlocutory appeal, the appellant is limited to briefing only those issues presented in the petition for leave to appeal and may not raise additional issues without the prior consent of the court." *State v. Aufderhaar*, 2004 WI App 208, ¶ 1, 277 Wis. 2d 173, 689 N.W.2d 674.

The court concluded that the State's failure to follow the provisions of Wis. Stat. § 938.273 did not deprive the juvenile court of personal jurisdiction over Aufderhaar, pursuant to *State v. Jermaine T.J.,* 181 Wis. 2d 82, 510 N.W.2d 735 (Ct. App. 1993). The court stated " 'it is the delinquency petition that is the critical procedure for acquiring personal jurisdiction over the juvenile.' " (Quoting *Jermaine T.J.,* 181 Wis. 2d at 91.) In response to the 502–day delay, the court affirmed the circuit court's conclusion that the delay was not intentional and therefore not in violation of Aufderhaar's due process rights.

¶ 9. Aufderhaar filed a petition to review, raising two issues: (1) whether a 502–day delay between the filing of the juvenile delinquency petition and the filing of a waiver petition demands dismissal of the adult court criminal proceedings; and (2) whether the failure of the State and the juvenile court to follow the statutory provisions for service deprived the circuit court of personal jurisdiction. We granted the petition.

## II. DISCUSSION

### A. Standard of Review

■■■■

¶ 10. Due process determinations are questions of law we decide de novo. *State v. Sorenson,* 2002 WI 78, ¶ 25, 254 Wis. 2d 54, 646 N.W.2d 354. This case turns in part on questions of statutory interpretation to which we apply a de novo standard of review, but benefiting from the analyses of both the circuit court and the court of appeals. *State v. Cole,* 2003 WI 59, ¶ 12, 262 Wis. 2d 167, 663 N.W.2d 700.

B. Waiver Petition

■

¶ 11. Aufderhaar first argues that the 502–day delay between the filing of the juvenile delinquency petition and the filing of a waiver petition violates his due process rights and requires dismissal of the adult court criminal proceedings. We have ruled that only an intentional delay by the State to avoid juvenile court jurisdiction constitutes a due process violation requiring dismissal. *See State v. Montgomery,* 148 Wis. 2d 593, 595, 436 N.W.2d 303 (1989). We agree that there is no evidence the State delayed filing the waiver petition until after Aufderhaar turned seventeen. The State did not resume its prosecution of Aufderhaar until Montana authorities called on March 6, 2003, explaining that Aufderhaar was involved in a juvenile matter in Montana and providing a current address for Aufderhaar. We agree with the court of appeals that "it is quite apparent that Aufderhaar was himself the catalyst for the State's renewed interest in him." Because the record shows that the waiver petition was filed in response to Aufderhaar's Montana actions and not in response to Aufderhaar turning seventeen, we conclude the delay was not an intentional attempt by the State to avoid the juvenile system, and therefore the State did not violate Aufderhaar's due process rights.[5]

---

[5] Alternatively, Aufderhaar argues we should abandon the test set out in *State v. Montgomery,* 148 Wis. 2d 593, 595, 436 N.W.2d 303 (1989). He favors a standard that would hold that egregiously negligent delay by the State can also violate due process rights. Aufderhaar fails to persuade us that the *Montgomery* decision is no longer good law; accordingly, we decline to overrule it.

## C. Personal Jurisdiction

¶ 12. Aufderhaar next argues that the circuit court does not have personal jurisdiction over him because the State and juvenile court failed to follow the statutory requirements for service of process in juvenile cases, which deprived the juvenile court of the personal jurisdiction required in order to validly waive Aufderhaar into adult court. Wisconsin Stat. § 938.27(3)(a)1 requires the court to "notify, under s. 938.273, the juvenile, any parent, guardian and legal custodian of the juvenile . . . of all hearings involving the juvenile under this subchapter, except hearings on motions for which notice need only be provided to the juvenile and his or her counsel." Further statutory requirements are found in Wis. Stat. § 938.273(1):

> Service of summons or notice required by s. 938.27 may be made by mailing a copy thereof to the persons summoned or notified. If the persons, other than a person specified in s. 938.27(4m), fail to appear at the hearing or otherwise to acknowledge service, *a continuance shall be granted,* except where the court determines otherwise because the juvenile is in secure custody, *and service shall be made personally by delivering to the persons a copy of the summons or notice; except that if the court is satisfied that it is impracticable to serve the summons or notice personally, it may make an order providing for the service of the summons or notice by certified mail addressed to the last-known addresses of the persons.* The court may refuse to grant a continuance when the juvenile is being held in secure custody, but in such a case the court shall order that service of notice of the next hearing be made personally or by certified mail to the last-known address of the person who failed to appear at the hearing. Personal service shall be made at least 72 hours before the time of the hearing. Mail shall be sent at least 7 days before the

time of the hearing, except where the petition is filed under s. 938.13 and the person to be notified lives outside the state, in which case the mail shall be sent at least 14 days before the time of the hearing.

(Emphasis added.)

¶ 13. For our interpretation of these statutes, we rely on the criteria of statutory interpretation set out in *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, 271 Wis. 2d 633, 681 N.W.2d 110. In *Kalal*, we explained that our focus was to determine "statutory meaning." *Id.*, ¶ 44. We explained that:

> [j]udicial deference to the policy choices enacted into law by the legislature requires that statutory interpretation focus primarily on the language of the statute. We assume that the legislature's intent is expressed in the statutory language. Extrinsic evidence of legislative intent may become relevant to statutory interpretation in some circumstances, but is not the primary focus of inquiry. It is the enacted law, not the unenacted intent, that is binding on the public. Therefore, the purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect.

*Id.* As we have said many times, we begin with the language used in the statute and if that language is plain and clearly understood, we ordinarily stop our inquiry. *See Seider v. O'Connell*, 2000 WI 76, ¶¶ 44–53, 236 Wis. 2d 211, 612 N.W.2d 659. Context is also important when determining the plain meaning of a statute, as is the purpose of the statute and its scope, if those qualities can be ascertained from the language of the statute itself. *Kalal*, 271 Wis. 2d 633, ¶¶ 46–48. These are all intrinsic sources for statutory interpretation. *Id.*

348

¶ 14. However, if the meaning of the statute is not plain and the statute "is capable of being understood by reasonably well-informed persons in two or more senses," then the statute is ambiguous. *Id.,* ¶ 47. When a statute is ambiguous, we often consult extrinsic, "interpretive resources outside the statutory text," such as legislative history. *Id.,* ¶ 50.

¶ 15. The parties agree that Wis. Stat. § 938.27(3)(a)1 plainly required service of a summons or notice on both Aufderhaar and his parents and that Wis. Stat. § 938.273(1) describes how that is to be accomplished. The State asks that we conclude that "personal jurisdiction attaches" when service is accomplished in a "statutorily authorized manner." The State takes this position in part based on our opinion in *State v. Hezzie R.,* 219 Wis. 2d 848, 867, 580 N.W.2d 660 (1998), that juvenile court proceedings are not criminal proceedings, but rather, they often are hybrids with civil and criminal components.[6] We agree with these

---

[6] Although delinquency proceedings adjudicate juveniles alleged to have violated state or federal criminal law, *see* Wis. Stat. §§ 938.02, 938.12, Wisconsin courts have stated that "a juvenile delinquency proceeding is civil in nature," *N.E. v. Wisconsin DHSS,* 122 Wis. 2d 198, 209, 361 N.W.2d 693 (1985), and that "[g]enerally, juvenile delinquency proceedings are not criminal proceedings." *State v. Wolfe,* 2001 WI App 136, ¶ 15, 246 Wis. 2d 233, 631 N.W.2d 240; *see also State v. Hezzie R.,* 219 Wis. 2d 848, 867, 580 N.W.2d 660 (1998). We also note that Wis. Stat. § 938.35(1) states, "A judgment in a [juvenile delinquency] proceeding on a petition under this chapter is not a conviction of a crime." The United States Supreme Court has stated:

> [T]he juvenile court proceeding has not yet been held to be a "criminal prosecution," within the meaning and reach of the Sixth Amendment, and also has not yet been

contentions, as does Aufderhaar. Where the State and Aufderhaar fundamentally disagree is on two points: (1) whether the required service occurred; and (2) if, not, what is an appropriate remedy.

### 1. Service of summons

■

¶ 16. The State argues that personal jurisdiction in the juvenile court attached on October 31, 2001, when the Walworth County juvenile court clerk mailed the summons for appearance on the delinquency petition to Aufderhaar's Whitewater, Wisconsin address by regular mail, and it was not returned. This mailing occurred after the court had knowledge that Aufderhaar had moved to Montana.[7] The State also asserts that a notice of hearing and waiver petition mailed to Rollins, Montana on March 14, 2003, was sufficient, as it was not returned. The State contends these mailings, either individually or collectively, satisfy Wis. Stat. § 938.27(3)(a)1 and Wis. Stat. § 938.273(1).[8] We disagree.

---

regarded as devoid of criminal aspects merely because it usually has been given the civil label.

Little, indeed, is to be gained by any attempt simplistically to call the juvenile court proceeding either "civil" or "criminal." The Court carefully has avoided this wooden approach.

*McKeiver v. Pennsylvania,* 403 U.S. 528, 541 (1971).

[7] On October 9, 2001, a notice of juvenile referral was sent to Aufderhaar and his parents in Hot Springs, Montana. This notice was returned undelivered.

[8] The State also argues that a juvenile's personal appearance is not required for the court to obtain personal jurisdiction. Because we conclude that the juvenile court failed to obtain

¶ 17. Wisconsin Stat. § 938.27(3)(a)1 plainly requires notice "under s. 938.273" be given to the juvenile and "any parent." Wisconsin Stat. § 938.273(1) provides three ways in which statutorily sufficient notice may be provided: (1) by mailing a summons or notice for appearance in regard to the delinquency petition *and* the juvenile and any parent appear; (2) by personal service on the juvenile and any parent; or (3) if the court is satisfied that it is impracticable to serve the summons or notice personally, by certified mail addressed to the last known addresses of the persons to be served.

¶ 18. If the mailing of the summons that the State sent on October 31, 2001, had resulted in Aufderhaar and a parent's appearance, we would agree that personal jurisdiction attached with that mailing.[9] However, no one appeared in response to the mailings. At that point, the State could have caused personal jurisdiction to attach by personal service or by convincing the court

personal jurisdiction through its failure to follow the requirements of Wis. Stat. § 938.27(3)(a)1 and Wis. Stat. § 938.273(1), we need not resolve this issue.

[9] We do not decide whether the March 14, 2003 mailing of the petition to waive juvenile court jurisdiction would have been sufficient to cause personal jurisdiction to attach because no appearance resulted from that mailing. However, we do note that the waiver petition did not contain a description of the activities that allegedly caused the filing of a delinquency petition, the statute or statutes that the delinquency petition alleged Aufderhaar violated or a copy of the delinquency petition. Therefore, the waiver petition did not provide Aufderhaar with notice of the charges pending against him. Due process encompasses the right to be informed of "the nature and cause of the accusation." *Holesome v. State,* 40 Wis. 2d 95, 102, 161 N.W.2d 283 (1968).

to order service by certified mail and then completing service by that mode.

¶ 19. The court of appeals was correct in stating, "It is undisputed that the juvenile court erred when, following Aufderhaar's nonappearance at his initial hearing to respond to the delinquency petition, it failed to comply with Wis. Stat. § 938.273." After Aufderhaar failed to appear at the initial hearing, § 938.273(1) required the juvenile court to grant a continuance and to order personal service or service via certified mail. The juvenile court did none of these things, but rather, it ordered a capias under Wis. Stat. § 938.28. This was insufficient to cause personal jurisdiction to attach.[10]

¶ 20. The State also argues that proper notice was given to the Aufderhaars even though the juvenile court did not follow Wis. Stat. § 938.273(1). The State argues that the court of appeals erred in characterizing the various mailings as establishing constructive notice. The State contends that when the clerk's office mailed the summons and delinquency petition in October 2001 to the Aufderhaars' former address in Whitewater, an address "reasonably calculated to reach [Aufderhaar]," actual notice of the delinquency petition was established. Further, the circuit court stated that Aufderhaar "clearly receive[d] at least one of those two notices" sent in March 2003 regarding the waiver hearing.

___

[10] We note that the State has the burden to prove compliance with statutory service requirements, that is, to establish that the juvenile was properly served and is therefore subject to the court's jurisdiction. *See Hagen v. City of Milwaukee Employee's Ret. Sys. Annuity & Pension Bd.,* 2003 WI 56, ¶ 12, 262 Wis. 2d 113, 663 N.W.2d 268.

¶ 21. To support this argument, the State points to cases such as *State ex rel. Flores v. State,* 183 Wis. 2d 587, 612, 516 N.W.2d 362 (1994), for the proposition that the "mailing of a letter creates a presumption that the letter was delivered and received." Under this rule, the State argues that because the proper documents had been mailed to various addresses and not returned, Aufderhaar had actual notice and therefore personal jurisdiction was obtained over him. The court of appeals agreed, citing to *Flores* as part of its rationale that the juvenile court had obtained personal jurisdiction.

¶ 22. The State's argument fails because whether Aufderhaar had constructive or actual notice is irrelevant. Personal jurisdiction in this case depends on compliance with the procedures set out in Wis. Stat. § 938.273(1). As we have already stated, after Aufderhaar failed to appear at the initial hearing, the statute requires the juvenile court to grant a continuance and order service to be made personally or via certified mail, yet the juvenile court did none of these things. We also note that *Flores* is not a service of process case, but rather, it concerns an evidentiary rule that the mailing of a letter creates a presumption that the letter was delivered and received. The provisions of § 938.273(1), rather than evidentiary rules, govern service and personal jurisdiction in juvenile cases.

¶ 23. The State makes an alternative argument that personal jurisdiction in the juvenile court attaches when the State files a delinquency petition. It points to *Jermaine T.J.,* which was cited by the court of appeals in its decision affirming the circuit court's denial of Aufderhaar's motion to dismiss as supportive of this

353

contention. In *Jermaine T.J.,*[11] the juvenile was in custody when the delinquency petition was filed. *Jermaine T.J.,* 181 Wis. 2d at 85. A secure detention hearing was conducted and Jermaine was released to his parents the same day. *Id.* Delinquency and waiver petitions and a summons were sent by regular mail to Jermaine and his parents. *Id.* Jermaine failed to appear at the date set for the initial appearance on the delinquency and waiver petitions and the juvenile court issued a capias. *Id.* When Jermaine was taken into custody on an unrelated charge, he then made an initial appearance on the waiver and delinquency petitions on which he previously had failed to appear. *Id.* He did not contest the court's jurisdiction over him at that hearing.[12] The court orally informed Jermaine of the date of the waiver hearing, but he failed to appear again and a second capias was issued. *Id.* at 86. After Jermaine was arrested again, the waiver hearing was held and Jermaine was waived into adult court. *Id.*

¶ 24. As in the present case, Jermaine moved to dismiss the case because the service statute was not followed, but the circuit court denied the motion and the court of appeals affirmed. The court of appeals stated "the juvenile court did not order that Jermaine be personally served; nor did it find that personal service would be ineffectual and order service by certified mail. Under the unambiguous terms of the statute, we conclude that this was error." *Id.* at 87. However, the

---

[11] The statute at issue in *State v. Jermaine T.J.,* 181 Wis. 2d 82, 510 N.W.2d 735 (Ct. App. 1993), was Wis. Stat. § 48.273, a predecessor of Wis. Stat. § 938.273, but the statutes contain identical requirements.

[12] *See Gibson v. State,* 47 Wis. 2d 810, 815, 177 N.W.2d 912 (1970) (concluding personal jurisdiction may be acquired by appearance).

court of appeals ultimately ruled that "[w]e do not agree that the error of the juvenile court mandates that this case be dismissed." *Id.* at 88. The court likened Jermaine's situation of being arrested pursuant to an improperly issued capias to that of an illegal arrest, and "[i]n Wisconsin, an illegal arrest is not a jurisdictional defect." *Id.* at 90 (citing *State v. Smith,* 131 Wis. 2d 220, 240, 388 N.W.2d 601 (1986)).

¶ 25. To support its argument that the provisions in Wis. Stat. § 938.273 need not be followed in order for the juvenile court to obtain personal jurisdiction, the State cites to the statement in *Jermaine T.J.* that "we conclude that it is the delinquency petition that is the critical procedure for acquiring personal jurisdiction over the juvenile." *Id.* at 91 (citing *Smith,* 131 Wis. 2d at 238–240). The State misconstrues the analyses in *Jermaine T.J.* and *Smith.*

¶ 26. First, Jermaine appeared in regard to the delinquency and waiver petitions without contesting jurisdiction. Aufderhaar did not. This is an important difference because it provided an alternative route for personal jurisdiction to attach. As the court of appeals explained, " '[The] physical presence gives the juvenile court jurisdiction over the custody of the child.' " *Jermaine T.J.,* 181 Wis. 2d at 89 (quoting *State ex rel. La Follette v. Circuit Court,* 37 Wis. 2d 329, 343, 155 N.W.2d 141 (1967)). We find no fault with this reasoning, as it supports our conclusion that while a delinquency petition is "critical" for acquiring personal jurisdiction, it is not, in itself, sufficient. Second, *Jermaine T.J.* did not address the question presented here because, as the court noted, personal jurisdiction was obtained by an alternate means, appearance.

¶ 27. Accordingly, we agree with Aufderhaar that unless the defect is waived by appearance, compliance with statutory provisions regarding service of process is required before a juvenile court has personal jurisdiction.[13] Additionally, a juvenile's actual knowledge of the pendency of the action is not equivalent to service. *See Hagen v. City of Milwaukee Employee's Ret. Sys. Annuity & Pension Bd.*, 2003 WI 56, ¶ 13, 262 Wis. 2d 113, 663 N.W.2d 268 (citing *Heaston v. Austin*, 47 Wis. 2d 67, 71, 176 N.W.2d 309 (1970)). Allowing the juvenile court to waive Aufderhaar into adult court, where the criminal penalties are more substantial, without its following the proper statutory procedure fails to "provide due process through which each juvenile offender and all other interested parties are assured fair hearings, during which constitutional and other legal rights are recognized and enforced," one of the stated purposes of the Juvenile Justice Code. Wis. Stat. § 938.01(2)(d).

¶ 2. Remedy

¶ 28. Because personal jurisdiction never attached, the juvenile court could not waive Aufderhaar into adult court. Therefore, the waiver order was ineffective, and we reverse the court of appeals decision affirming the circuit court's denial of Aufderhaar's motion to dismiss the criminal action in adult court. However, we do so without prejudice. Additionally, because the juvenile proceeding commenced before

---

[13] We have previously stated that "[f]ailure to obtain personal jurisdiction over the defendant by statutorily proper service of process is a fundamental defect fatal to the action, regardless of prejudice." *Hagen*, 262 Wis. 2d 113, ¶ 13 (citing *Am. Family Mut. Ins. Co. v. Royal Ins. Co.*, 167 Wis. 2d 524, 534–35, 481 N.W.2d 629 (1992).

Aufderhaar turned seventeen years old, Wis. Stat. § 938.12(2); *D.W.B. v. State,* 158 Wis. 2d 398, 399, 462 N.W.2d 520 (1990) (juvenile court proceeding is commenced on the date the juvenile petition is filed), this proceeding should be returned to the point at which the jurisdictional defect occurred. Thereafter, the juvenile court can determine whether it will attempt service sufficient to satisfy Wis. Stat. § 938.273(1). If it does obtain sufficient service to accord personal jurisdiction over Aufderhaar, it may file yet another waiver petition to transfer the matter into adult court. Or in the alternative, the court may dismiss the delinquency petition. We leave that decision to the judgment of the juvenile court.

## III. CONCLUSION

¶ 29. We conclude that the failure to follow the statutory requirements for service defeats the State's assertion of personal jurisdiction and requires the circuit court to dismiss the criminal charges without prejudice and the juvenile court to vacate the waiver order. We therefore reverse and remand.

*By the Court.*—The decision of the court of appeals is reversed and cause remanded.