BAR CODE RESOURCES, a division of Allen Management, Inc., Plaintiff-Respondent,

v.

AMERITECH INFORMATION SYSTEMS, INC., a Delaware corporation, Defendant-Appellant.

Court of Appeals

*No. 98–1314. Submitted on briefs May 11, 1999.—Decided July 6, 1999.*

(Also reported in 599 N.W.2d 872.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Stephen J. Liccione* of *Ameritech Corporation* and *Mark M. Leitner* and *Joseph S. Goode* of *Kravit, Gass, Hovel & Leitner, S.C.* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Debra A. Slater* of *Weiss, Berzowski, Brady & Donahue LLP* of Milwaukee.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

SCHUDSON, J. Ameritech Information Systems, Inc., appeals from the trial court judgment granting default judgment to Bar Code Resources, and awarding Bar Code approximately $328,000 on its claims arising from the parties' dispute over their contract for computer programming and software services. Ameritech argues that the trial court erred in concluding: (1) Bar Code's service of process on Ameritech was proper; (2) Ameritech failed to establish excusable neglect for not timely filing its answer to the complaint; and (3) the evidence supported the award. We conclude that the trial court erred in determining that Bar

Code's service of process on Ameritech was proper. Accordingly, we reverse.[1]

The essential facts relevant to resolution of this appeal are undisputed. As summarized in Bar Code's brief:

> On November 12, 1996, Patrick J. Schell, of LaSalle Process Servers, served the summons and complaint upon Ameritech. He did so by going to "Ameritech at 225 W. Randolph[,] Chicago IL." This is the address contained in the [Bar Code]/Ameritech agreement as the address to use when providing notices to Ameritech. Mr. Schell entered the Ameritech building, went to the security desk and stated that he had "a Summons and Complaint for the company." The woman at the desk then asked David Kennedy, the security manager, who could accept this service. Mr. Kennedy told the process server, "I can accept service, we are always being sued[,]" and when asked by the process server if he was authorized to accept process, Mr. Kennedy said he was. Mr. Schell therefore served Mr. Kennedy as the person apparently in charge of Ameritech.

(Record references omitted.)

Bar Code's summary, however, is incomplete. The record establishes additional, critical facts: (1) the Bar Code/Ameritech contract provided that all notices were to be "delivered personally or sent by express delivery service or by certified mail" to "Vice President & General Counsel, Enhanced Business Services, 225 Randolph Street, *HQ23C*, Chicago." (emphasis added);

---

[1] Resolution of the appeal on this basis obviates the need to address Ameritech's other two arguments. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed).

(2) "HQ23C" referred to an office on the 23rd floor, which was the proper office for service on Ameritech; (3) David Kennedy was a security officer employed not by Ameritech, but by Illinois Bell, a wholly-owned subsidiary of Ameritech Corporation, located on the 10th floor; according to his affidavit, Mr. Kennedy had no authority "to accept service of process on behalf of Ameritech Corporation or any of its subsidiaries or business units"; and (4) although the building at 225 West Randolph Street housed the Ameritech offices, the building was not what Bar Code's brief termed the "Ameritech building," if that were to imply that it housed only Ameritech offices; other companies, including Illinois Bell, were located in the building.

Ameritech contends that it was never served and argues, therefore, that the judgment must be reversed because the trial court never gained personal jurisdiction over it in Bar Code's action. *See Danielson v. Brody Seating Co.*, 71 Wis. 2d 424, 429, 238 N.W.2d 531, 533–34 (1976) ("The service of a summons in a manner prescribed by statute is a condition precedent to a valid exercise of personal jurisdiction, even though a different method might properly have been prescribed, and notwithstanding actual knowledge by the defendant.") (footnote omitted). Ameritech is correct.

Section 801.11(5)(a), STATS., specifies that a plaintiff invokes personal jurisdiction over a corporation:

> By personally serving the summons upon an officer, director or managing agent of the corporation . . . . In lieu of delivering the copy of the summons to the officer specified, the copy may be left in the office of such officer, director or managing agent with the person who is apparently in charge of the office.

Bar Code did not utilize the statute's direct personal delivery service option. Thus, the issue in this case is whether Mr. Schell's presentation of the summons and complaint to Mr. Kennedy satisfied Bar Code's obligation to comply with the statute's alternative service option. In other words, under § 801.11(5)(a), did Mr. Schell's presentation of the summons and complaint to Mr. Kennedy constitute service "in the office of such officer, director or managing agent with the person who is apparently in charge of the office"?

To resolve the issue in this appeal, we must interpret and apply the words of § 801.11(5)(a), STATS. If a statute is clear and unambiguous, we apply the statutory language without further recourse to interpretative aids. *See UFE Inc. v. LIRC*, 201 Wis. 2d 274, 281, 548 N.W.2d 57, 60 (1996) ("If the plain meaning of the statute is clear, a court need not look to rules of statutory construction or other extrinsic aids."). The application of a statute to undisputed facts presents a question of law, and our review of the trial court's interpretation and application of the statute is *de novo. See DOR v. Milwaukee Brewers Baseball Club*, 111 Wis. 2d 571, 577, 331 N.W.2d 383, 386 (1983).

One of the "threshold questions in any dispute over the adequacy of service" is "whether the appropriate statutory procedures for service have been complied with." *Keske v. Square D Co.*, 58 Wis. 2d 307, 312, 206 N.W.2d 189, 191 (1973). Moreover, "Wisconsin requires strict compliance with its rules of statutory service, even though the consequences may appear to be harsh." *Dietrich v. Elliott*, 190 Wis. 2d 816, 827, 528 N.W.2d 17, 21 (Ct. App. 1995). Bar Code had the burden to establish its compliance with the statutory service requirements. *See Danielson*, 71 Wis. 2d at 430,

238 N.W.2d at 534. Here, we conclude that § 801.11(5)(a) clearly and unambiguously establishes requirements for service with which Bar Code failed to comply.

Ameritech persuasively argues that the analysis of whether a party has complied with the alternative service option under § 801.11(5)(a), STATS., presents two questions: (1) Objectively, was the location where the summons and complaint were presented "the office of such officer, director or managing agent"? (2) Subjectively, was it reasonable for the process server to conclude that the person presented with the summons and complaint was "the person who is apparently in charge of the office"? Further, Ameritech explains, the proper analysis must begin with the first question because if, in fact, the process server simply fails to locate the correct office, service cannot be accomplished and, therefore, the second question need not be considered.[2] Thus, Ameritech maintains, "[o]nly after the plaintiff demonstrates that the process server was present at the proper office may the court consider the process server's subjective understanding of who 'appeared' to be in charge of that office."

Bar Code responds, however, that Mr. Schell "reasonably concluded under the circumstances that Mr. Kennedy was the person *apparently* in charge of the offices of Ameritech's officers, directors or managing agents." Bar Code's argument finds factual support in the affidavits of Mr. Schell and Mr. Kennedy. Mr. Schell's affidavit states:

---

[2] Ameritech acknowledges that, of course, this general proposition could require an exception for the attempted service of a party that engages in an effort to conceal the actual location of its offices.

On November 12 1996 at 3:20 P.M. I had gone to Ameritech at 225 W Randolph Chicago Il. I went to the Security Desk and told the women [sic] siiting [sic] there that I had a Summons and Complaint for the company. She didn't know who to call so she called David Kennedy over to ask who would accept service. He stated, "I can accept service, we are always being sued." I asked him if he was authorized to accept process and he said yes. I asked for his name and job title which he said was DAVID KENNEDY SECURITY MANAGER. We shook hands and I left.

Although Mr. Schell's reference to "the company" was vague, Mr. Kennedy's affidavit provided added specification. Mr. Kennedy's affidavit states, in part:

In my capacity as a security supervisor, I often interact with law enforcement personnel who serve subpoenas requesting documents and other records from Ameritech Corporation. Similarly, I occasionally interact with private litigants who seek to obtain company documents and/or records in their private litigation. When requested, I transmit such requests to Ameritech's Court Order/Subpoena Center which has responsibility for honoring such judicially sanctioned requests for the production of records. This group is not the authorized recipient of Summonses and Complaints served on Ameritech Corporation or any of its subsidiary corporations or business units.

On or about November 8 [sic], 1996, *one of my security guards referred an individual to me who said he had some papers to serve on Ameritech.* Believing these papers to be a judicially sanctioned request for documents, I advised him that I would forward them to our Court Order/Subpoena Center. I did that and later learned that these documents

eventually were forwarded to [counsel for Ameritech] in Milwaukee, Wisconsin.

(Emphasis added.) Thus, Bar Code maintains that Mr. Schell reasonably believed that Mr. Kennedy was authorized to accept service for Ameritech. *See Horrigan v. State Farm Ins. Co.*, 106 Wis. 2d 675, 684, 317 N.W.2d 474, 479 (1982) ("When a person appears in response to a request for someone who may be served with legal process, it will normally be reasonable for the process server to serve that person.").

We conclude that Bar Code has not carried its burden to establish compliance with the statutory service requirements. Section 801.11(5)(a), STATS., literally read and strictly applied, does not allow for the flexibility Bar Code seeks. Bar Code's argument depends on a statutory reading riddled with what Ameritech terms "linguistic alchemy." As Ameritech explains:

> [Bar Code] seeks to transplant the subjective element of the "who may be served" requirement into the strictly objective "where process may be left" requirement. In effect, [Bar Code] urges a judicial amendment of sec. 801.11(5)(a)'s plain language to make the statute contain new language . . .: "the copy may be left in *what the process server believes is apparently* the office of such officer, director or managing agent[.]"

(Emphasis and final brackets in Ameritech's brief.) Ameritech is correct.

Additionally, as in *Keske*, where the supreme court approved a trial court's comment that "in some instances it would be unreasonable for a process server to conclude that someone outside of the immediate geographical office of the officer, director, or managing

294

agent was apparently in charge of 'the office,' " *Keske,* 58 Wis. 2d at 314, 206 N.W.2d at 192, here, the circumstances thwart Bar Code's theory. Given the size of the building and its numerous companies and offices, given the contractual specification of the twenty-third floor as the office for delivery of notices to Ameritech, given the presentation of the papers on the tenth floor to a person not even in the employ of the targeted corporation, it was not reasonable for Mr. Schell to conclude that, in presenting the summons and complaint to Mr. Kennedy, he had properly served Ameritech.

*By the Court.*—Judgment reversed.